UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-296 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendants Livingston, White, and Campuzano's Motion to Transfer Venue (D.E. 11), Defendants Livingston, White, and Campuzano's Motion to Dismiss for Lack of Standing (D.E. 12), Defendant Smith's Motion to Dismiss for Lack of Standing (D.E. 16), Defendant Brown's Motion to Dismiss for Lack of Standing (D.E. 19), and Defendant Lopez's Motion to Dismiss for Lack of Standing (D.E. 30).[1]  For the reasons stated herein, the Court DENIES Defendants' Motion to Transfer Venue (D.E. 11), and DENIES in part Defendants' Motion to Dismiss for Lack of Standing (D.E. 12, 16, 19, 30).

## I.      Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) and (4) (civil rights).

## II.      Factual Background

Plaintiff Prison Legal News ("PLN") publishes a monthly legal information magazine and distributes over fifty books dealing with the rights of incarcerated

---

[1] Defendants have filed three separate Motions to Dismiss for Lack of Standing, due to the different times at which Defendants were served.  The Motions, however, are substantively identical and this Order will cite only to the first-filed Motion (D.E. 12) when referring to specific arguments made therein.

individuals.  PLN is a distributor of <u>Women Behind Bars: The Crisis of Women in the</u> <u>U.S. Prison System</u>, written by Silja J.A. Talvi and <u>Perpetual Prisoner Machine: How</u> <u>America Profits from Crime</u>, by Joel Dyer.  The following factual background is based upon allegations Plaintiff PLN makes in its Original Complaint.  (D.E. 1.)

PLN alleges that, in December 2008, a female prisoner at the Texas Department of Criminal Justice ("TDCJ") Hilltop Unit located in Gatesville, Texas ordered a copy of <u>Women Behind Bars</u> from PLN.  PLN placed the book in the mail, and it arrived at the Hilltop Unit mailroom.  (D.E. 1 at 4-5.)

At the Hilltop Unit mailroom, an official identified in the Complaint as John Doe 1 allegedly completed a TDCJ "Publication Review/Denial Notification" form.  This form notified the prisoner that she could not receive <u>Women Behind Bars</u> because "a specific determination has been made that the publication is detrimental to offenders' rehabilitation, because it would encourage homosexual or deviant criminal behavior." (D.E. 1 at 5.)  The notification suggested that the book was censored because page 38 depicted "sex with a minor."  PLN did not receive a copy of the notice or directions on how to appeal the decision.  (D.E. 1 at 5.)

The relevant section of Page 38 of <u>Women Behind Bars</u>, which led to the TDCJ's decision to censor the book, reads as follows:

> What is even more remarkable about [Tina] Thomas [a medical doctor incarcerated in Oklahoma] is that she had overcome the kind of childhood trauma that might have completely derailed her adult life.  It might have been precisely that background that first propelled her to become an overachiever and attain a high level of professional success, but then came back to haunt her just as she had gotten to where she wanted to go.  The dark secret of her life was that she had been forced to perform fellatio on her uncle when she was just four years old.  Thomas explained that this unresolved trauma became 'the template for a lifetime of distrust, fear, uncertainty, and a spirit of self-negation.'

(D.E. 1 at 5-6; D.E. 12-2 at 6.)   The page contains no further discussion of "sex with a minor."   John Doe 1's censorship decision was reviewed by Defendant Jennifer Smith, the program specialist for TDCJ's Mail System Coordinators Panel ("MSCP"), and the TDCJ's Director's Review Committee ("DRC").   Smith is responsible for reviewing publications censored by the TDCJ mailroom staff.  (D.E. 1 at 2.)  The DRC is composed of Defendants Gilbert Campuzano, Jennifer Smith, Joni White, Richard Lopez, Kevin Campbell, and Chris Bell.  The DRC upheld Doe 1's decision, and the prisoner was not allowed to receive Women Behind Bars.  PLN stated that it was not informed of this decision, or told how to present information to the DRC during the review process.  (D.E. 1 at 6.)

After the book was censored, it was placed on a list of "disapproved" books that is circulated to other TDCJ mailrooms.  Thereafter, in September 2009, PLN claims that it sent two more copies of Women Behind Bars to prisoners in TDCJ's Garza East Unit, in Beeville, Texas.  Defendant E. Brown at the Garza East Unit censored the books, again relying on the "sex with a minor" passage on page 38.  Brown did not provide PLN with a copy of the "Publication Review/Denial Notification" or any other information about how to contest the decision.  (D.E. 1 at 6.)

In March 2009, PLN states that it sent a copy of another book, Perpetual Prisoner Machine: How America Profits from Crime to a prisoner incarcerated at TDCJ's Allred Unit in Iowa Park, Texas.  The TDCJ allegedly "disapproved" of this book because page 45 discussed "rape."  According to PLN, page 45 in fact quotes from a 1968 Philadelphia District Attorney's Office investigation into sexual assault in prison, and describes crimes committed against prisoners.  PLN states that it was not provided with information about

how to contest the TDCJ's censorship decision, or provide any opportunity to do so. (D.E. 1 at 7.)

PLN alleges that Defendants' censorship regime, as authorized and supervised by Defendant Brad Livingston, the Executive Director of the TDCJ, is "arbitrary, serves no legitimate penological purpose as applied to PLN's publications, and violates the constitutional rights of publishers like PLN. Livingston moreover fails to ensure the regime provides publishers constitutionally-required due process to contest decisions to ban their publications." (D.E. 1 at 7.) PLN further alleges that TDCJ's written policies do not permit censorship of publications like Women Behind Bars or the Perpetual Prisoner Machine for the reasons Defendants have identified, and contends that Defendants will likely continue to censor books PLN distributes without providing PLN due process. (D.E. 1 at 7.)[2] PLN contends that distribution of the books will "not have any significant impact on TDCJ facilities or programs," and "[r]eadily available alternatives to censoring [the books] could, at de minimis cost, easily satisfy any legitimate or significant interests of TDCJ without sacrificing the free speech and expression rights of PLN and the prisoners in TDCJ custody." (D.E. 1 at 7.) PLN claims that violation of its constitutional rights have resulted in lost revenue from book sales and loss of business reputation, in addition to the loss of its free speech and due process rights. (D.E. 1 at 8.)

---

[2] Although the Complaint at times implies that PLN is the "publisher" of these books (see, e.g., D.E. 1 at 8), PLN in fact only distributes Women Behind Bars and Perpetual Prisoner Machine. According to the Library of Congress catalog, http://catalog.loc.gov, Women Behind Bars is published by Seal Press, and Perpetual Prisoner Machine is published by Westview Press. Both are member of the Perseus Book Group. See http://www.perseusbooksgroup.com/perseus/about_us.jsp.

### III.    Procedural Background

On November 4, 2009, Plaintiff PLN filed suit in this Court pursuant to 42 U.S.C. §§ 1983 and 1988 against Defendant Livingston, in his individual capacity and his official capacity as director of the TDCJ, and Defendants Smith, Brown, John Doe, Campuzano, White, Lopez, Campbell, and Bell, in their individual capacities.  (D.E. 1.) Plaintiff claims that Defendants' censorship of Women Behind Bars and Perpetual Prisoner Machine violates PLN's free speech and expression rights, and Defendants' failure to notify PLN of its decision violated PLN's due process rights.  (D.E. 1 at 8.) PLN further alleges that Defendants' actions did not further any legitimate penological interest, and they acted "wantonly, willfully and/or maliciously" in violating PLN's rights.  (D.E. 1 at 8.)    Plaintiff seeks compensatory, punitive, and nominal damages for violations of its constitutional free speech and due process rights, injuries to its business reputation, and loss of revenue.  Plaintiff also requests appropriate declaratory relief as well as permanent injunctive relief requiring (1) Defendants to provide written notice to publishers and an opportunity to respond before censoring their publications, and (2) the adoption of specific guidelines delineating what materials may be delivered to prisoners through the mail.  (D.E. 1 at 9.)

On December 7, 2009, Defendants Livingston, White, and Campuzano filed a Motion to Transfer Venue, arguing that the case should be transferred to the Western District of Texas, Waco Division, as it is closest to the Hilltop facility, where many of the events giving rise to this litigation arose.  (D.E. 7.)  Also on December 7, these Defendants filed a Motion to Dismiss for lack of standing.  (D.E. 12.)  Subsequent Motions to Dismiss for lack of standing, substantively identical to the first Motion, were

filed by Defendant Smith (D.E. 16) and Brown (D.E. 19) on December 9 and December 11, 2009, respectively.  The Court first considers Defendants' Motion to Transfer Venue.

## IV.    Discussion

### A.    Motion to Transfer Venue (D.E. 11)

#### 1.    Applicable Law

Section 1404(a) of Title 28 provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a). District courts "have broad discretion in deciding whether to order a transfer. But this discretion has limitations imposed by the text of § 1404(a) and by the precedents of the Supreme Court and [the Fifth Circuit] that interpret and apply the text of § 1404(a)."  In re Volkwagen of America, Inc., 545 F.3d 304, 311 (5th Cir. 2008) (internal citations and quotation marks omitted).  As the Fifth Circuit has explained, "[t]he underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a). Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."  Id. at 313 (internal citations omitted).

To obtain a transfer, the moving party must show good cause. "This 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. [W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown

good cause and the district court should therefore grant the transfer." <u>In re Volkwagen</u>, 545 F.3d at 315.

In evaluating a motion to transfer venue under Section 1404(a), "the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." <u>In re Volkswagen AG</u>, 371 F.3d 201, 203 (5th Cir. 2004).  Once the Court makes this determination, it must then focus on "the language of § 1404(a), which speaks to the issue of 'the convenience of parties and witnesses' and to the issue of 'in the interest of justice.'" <u>Id.</u>  The "convenience" determination "turns on a number of private and public interest factors, none of which are given dispositive weight." <u>Id.</u>  "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>Id.</u>  The public concerns include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." <u>Id.</u>  The factors relevant to the "interests of justice" include "the pendency of related litigation in another forum [and] delays due to docket congestion." <u>See, e.g.</u>, <u>Salinas v. O'Reilly Automotive, Inc.</u>, 358 F. Supp. 2d 569, 573 (N.D. Tex. 2005).

In this case, Defendants argue that this action should be transferred to the Waco Division of the Western District of Texas for a number of reasons.  First, they argue that the Western District of Texas is an appropriate venue for this case.  The case might have

been brought there, as a substantial part of the events giving rise to Plaintiff's claims occurred there and unserved defendant John Doe presumably resides in that judicial district.  The policies and procedures Plaintiff disputes first arose at the Hilltop Facility, which is in the Waco Division.  (D.E. 11 at 6.)  Defendants also contend that Plaintiff's choice of venue is entitled to little deference, as it is not a resident of the Southern District of Texas, and the operative facts of Plaintiff's complaint first arose in the Waco Division.  (D.E. 11 at 6.)  Beyond these considerations, Defendants also argue that the private interest and public interest factors weigh in favor of transfer.  Specifically, Defendants contend that most relevant documents and witnesses are located at the Hilltop facility in Gatesville, Texas.  Trial in this court would force subpoenaed witnesses to come to the courthouse at their own expense, and maximum security female inmate witnesses at the Hilltop facility would have to be transported at considerable expense. These inmates would have to be housed overnight at Corpus Christi area jails.  Trial here, Defendants argue, would also lead to staffing shortages at the Hilltop facility, as staff could be called as witnesses and appear in Court in Corpus Christi.  In sum, the private interest factors favor transfer, Defendants contend, due to the cost and potential public safety issues that would be incurred by the transportation of staff and inmate witnesses to this Court in a potential trial.  (D.E. 11 at 9.)  Defendants further argue that the public interest factors also favor transfer.  There is greater court congestion in the Southern District of Texas, and the Western District has a more direct interest in adjudicating this case, since a majority of the alleged actions upon which Plaintiff's claims are based allegedly occurred at the Hilltop facility.  (D.E. 11 at 9-10.)

In response, Plaintiff argues that Defendants have not met their burden to show sufficient good cause to transfer the case, and have not demonstrated that Waco is more convenient.  Defendants have not shown that the private interest factors weigh in favor of transfer.  First, the relative ease of access to sources of proof is negligible, as most discovery can be done electronically, and, in any event, counsel for all parties are located in Austin, making transport of documentary evidence inevitable.  Second, the time and expenses need to transport inmate and staff witnesses would increase if the case were transferred to Waco, given the numerous witnesses located in the Southern District.  Moreover, any costs that Defendants incurred for transportation of witnesses would be reimbursed by the State.  (D.E. 22 at 5-9.)  Plaintiffs argue that the public factors also favor this Division.  Accounting for the different number of judges, the number of cases filed in the Western versus Southern Districts is roughly equal and does not favor a change of venue.  Additionally, TDCJ operates a large number of prisons in the Southern District of Texas and its headquarters are in Huntsville, Texas, within the Southern District.  As more TDCJ facilities are located in the Southern District than the Western District, the residents of the Southern District have a stronger interest in this litigation.  (D.E. 22 at 9-10.)

### 2.    Western District of Texas is an Appropriate Venue

As an initial matter, it is true that this case might have been brought in the Western District of Texas, Waco Division, as it is the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2).  The Complaint notes that initial decision to censor the book occurred in the Western District, when John Doe 1 refused to deliver Women Behind Bars to the prisoner

due to its depiction of "sex with a minor."  (D.E. 1 at 5.)  However, simply because this case might have been brought in the Waco Division does not necessarily mean it should be transferred there.  To make this determination, the Court must focus on the various factors outlined above.

### 3.       Public and Private Interest Factors

Turning first to the public interest factors, many of these factors are either inapplicable or weigh against transfer.  Both courts are equally familiar with the law that will govern the case, and no conflict of laws issues exist.  Further, as the alleged censorship decision also occurred at the Garza East Unit, in the Corpus Christi Division of the Southern District of Texas, this District has a local interest in having "localized interests decided at home."  Additionally, while it is true that the Southern District has on average more civil filings than the Western District, the Corpus Christi Division is able to promptly adjudicate this case without undue delay or "administrative difficulties flowing from court congestion."   Finally, no related litigation is pending in another forum.

The relevant private factors also weigh against transfer.  First, with regard to the relative ease of access to sources of proof, the fact that certain evidence may be geographically remote from this Division does not lead to the conclusion that transfer is warranted.   As other courts have recognized, modern technology has lessened the concerns raised by the remote geographic location of witness, documents, and other sources of proof.  See, e.g., Milwaukee Elec. Tool Corp. v. Black & Decker (N.A.), Inc., 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005) ("[T]echnological advancements have diminished traditional concerns related to ease of access to sources of proof and the cost of obtaining attendance of witnesses. While geographic concerns remain a part of the

analysis the Court is mindful that relevant documents and witnesses can be transported to this district in a fast and relatively inexpensive manner.") (internal citations and quotation marks omitted).  Further, as regards access to witnesses, "[t]he moving party must offer more than mere allegations that certain key witnesses are not available or are inconveniently located.  Instead, the movant must specifically identify the key witnesses and outline their testimony." See Mid-Continent Cas. Co. v. Petroleum Solutions, Inc., 629 F. Supp. 2d 759, 763 n.3 (S.D. Tex. 2009).  In this case, Defendants have just made general claims of inconvenience without offering any specifics; this is insufficient to demonstrate that transfer is proper.

Second, with regard to the availability of compulsory process to secure the attendance of witnesses, Defendants have again failed to demonstrate that this factor favors the Waco Division.  Although Defendants contend that a few witnesses at the Hilltop facility, beyond the 100 mile compulsory process of this Court pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(ii), may have to be called through compulsory process, this contention is merely speculative.   In any event, Plaintiff has also identified witnesses who would also present compulsory process difficulties.  (D.E. 22 at 6.)  At most, this factor is neutral.

The third factor, the costs of attendance for willing witnesses, also favors this Division.  According to Plaintiff's response, many of its witnesses are actually located much closer to Corpus Christi.  Three copies of Women Behind Bars that Defendants allegedly censored were sent to prisoners at TDCJ facilities in the Southern District of Texas.  Two prisoners live at the Garza East Unit, approximately 55 miles from Corpus Christi but approximately 298 miles from Waco, and one prisoner lives at the Segovia

Unit, approximately 147 miles from Corpus Christi but over 400 miles from Waco.  Lou Johnson, the inmate who ordered but did not receive Women Behind Bars while at the Hilltop Unit has since been released and now resides in the Houston area, according to Plaintiff.  Finally, Plaintiff has brought to the Court's attention several other inmates, all housed at TDCJ facilities located closer to Corpus Christi, who may be called to testify because they allegedly received the book without censorship.[3]  Staff at all of these TDCJ facilities may also be called to testify.  While it may be true that certain witnesses at the Hilltop facility, and Defendants who reside in Huntsville, Texas, would be inconvenienced by trial here, any such expenses will likely be reimbursed by the State.  On balance, this factor does not support transfer.

The final factor, "other practical problems that make trial of a case easy, expeditious and inexpensive," also does not favor transfer.  Although certain inmate witnesses may have to be transported long distances to Corpus Christi if their in-person testimony were needed, thus raising cost and public safety concerns, the reverse is true for inmate witnesses located at TDCJ facilities near Corpus Christi.  Defendants have not demonstrated that a transfer of venue would do anything other than shift these concerns from certain witnesses to others.

Overall, none of the public or private factors suggest that the Waco Division would be "more convenient" than the Corpus Christi Division, as the law requires.  In re Volkwagen, 545 F.3d at 315.  Given the relatively widespread location of evidence, staff witnesses, inmate witnesses, and attorneys, a transfer to the Waco Division would merely shift, not eliminate, transportation costs and related issues.  "A case should not be

---

[3] Plaintiff states that it would call these witnesses to show that the censorship serves no legitimate penological interest.  (D.E. 22 at 6-7 & n.5.)

transferred if the only practical effect is to shift inconvenience from the moving party to the nonmoving party."  Goodman Co., L.P. v. A & H Supply, Inc., 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005).

As Defendants have not demonstrated that transfer of venue is proper in this case, the Court must deny Defendants' Motion to Transfer Venue to the Western District of Texas, Waco Division.  (D.E. 11.)[4]

### B.      Motion to Dismiss for Lack of Standing  (D.E. 12, 16, 19)

Defendants' Motions to Dismiss have been filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  Defendants raise three primary arguments: lack of standing, expiration of the relevant statute of limitations, and qualified immunity (for Defendants sued in their individual capacities).  (D.E. 12, 16, 19.)  As the Court has granted the parties leave to submit additional briefing on the issue of qualified immunity, the Court addresses only the lack of standing and statute of limitations issues in this Order.

When reviewing a motion to dismiss under Rule 12(b)(1), a district court may dismiss the action based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts.  Williams v. Wynne, 533 F.3d 360, 365 n.2 (5th Cir. 2008).  The party who invokes federal court jurisdiction bears

---

[4] Defendants argue, in the alternative, that the Houston Division of the Southern District of Texas is the next appropriate venue, mainly because many of the witnesses and relevant documents are located in Huntsville, Texas, within the Houston Division.  Further, potential female inmate witnesses could be held at a TDCJ female facility in Texas City.  (D.E. 11 at 3 n.2.)  Other than convenience of certain parties, there is no good reason to transfer this case to Houston.  Many of the potential inmate and staff witnesses reside closer to the Corpus Christi or Waco Divisions, and the attorneys are located in Austin.  A transfer to Houston would do little to increase convenience in this case.

the burden of showing that jurisdiction is proper.  <u>Hartford Ins. Group v. Lou-Con Inc.</u>,
293 F.3d 908, 910 (5th Cir. 2002).

When reviewing a motion to dismiss for failure to state a claim, all well-pleaded
facts are accepted as true and are viewed in the light most favorable to the plaintiff.  <u>In re
Katrina Canal Breaches Litig.</u>, 495 F.3d 191, 205 (5th Cir.2007); <u>Gregson v. Zurich Am.
Ins. Co.</u>, 322 F.3d 883, 885 (5th Cir. 2003) ("This Court construes the complaint liberally
in favor of the plaintiff, and takes all facts pleaded in the complaint as true.").   "To
survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a
claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550
U.S. 544, 570 (2007)).  A motion to dismiss under rule 12(b)(6) "is viewed with disfavor
and is rarely granted."  <u>Harrington v. State Farm Fire & Cas. Co.</u>, 563 F.3d 141, 147 (5th
Cir. 2009).

### 1.        Standing to Bring First Amendment Claim

In <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989), the Supreme Court recognized
that "publishers who wish to communicate with those who, through subscription,
willingly seek their point of view have a legitimate First Amendment interest in access to
prisoners." 490 U.S. at 408.  The Court went on to focus, not on the question of whether
publishers (as opposed to others) have a First Amendment right to access prisoners, but
rather on the "standard of review [the Supreme] Court should apply to prison regulations
limiting that access."  <u>Id.</u>  The parties disagree as to whether the right recognized in
<u>Thornburgh</u> extends to book distributors.  Defendants contend that Plaintiff, as a
distributor, does not have a recognized constitutional right of access to inmates, and
therefore lacks standing to bring this case. (D.E. 12 at 4-5.)  In response, Plaintiff argues

that the Supreme Court and lower courts have consistently recognized the constitutional right of distributors to challenge regulations restricting the distribution of books.  (D.E. 21 at 2-3.)  Moreover, Plaintiff argues that it fits the relevant standing requirements. (D.E. 21 at 4.)

### a.      First Amendment Rights of Distributors

The Supreme Court has repeatedly recognized the First Amendment rights of book distributors in a variety of circumstances, which exist independently of the rights of publishers or readers.  In 1938, the Supreme Court in Lovell v. City of Griffin, Ga., reviewed a city ordinance that prohibited the distribution of "circulars, handbooks, advertising, or literature of any kind."  In concluding that the ordinance violated the First Amendment, the Court stated, "[t]he ordinance cannot be saved because it relates to distribution and not to publication.  'Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value.'"  303 U.S. 444, 452 (1938) (quoting Ex Parte Jackson, 96 U.S. 727, 733 (1877)). Later, in Smith v. California, the proprietor of a bookstore challenged a city ordinance prohibiting the possession of obscene materials anywhere books were sold.  361 U.S. 147, 148-49 (1959).  In noting that the proprietor was entitled to First Amendment protections, the Court stated, "it . . . requires no elaboration that the free publication and dissemination of books and other forms of the printed word furnish very familiar applications of these constitutionally protected freedoms [of the press and of speech].  It is of course no matter that the dissemination takes place under commercial auspices. Certainly a retail bookseller plays a most significant role in the process of the distribution of books."  361 U.S. at 150.   Soon after, in 1963, the Court in Bantam Books, Inc. v.

Sullivan again noted the First Amendment rights of book distributors, stating "the constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication."  372 U.S. 58, 64 n.6 (1963).  The Supreme Court has reiterated this principle in other cases.  See Griswold v. Connecticut, 381 U.S. 479, 482-83 (1965) ("The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive . . . .  Without those peripheral rights the specific rights would be less secure.").  Lower courts have also consistently affirmed the First Amendment rights of distributors.  In Lerman v. Flynt Distributing Co., the Second Circuit stated that "First Amendment guarantees have long been recognized as protecting distributors of publications."  745 F.2d 123, 139 (2d Cir. 1984); see VIP of Berlin, LLC v. Town of Berlin, 644 F.Supp.2d 151, 158 (D. Conn. 2009) (citing Smith, Lerman). Similarly, in U.S. v. 18 Packages of Magazines, the court reasoned, "[t]he First Amendment surely was designed to protect the rights of readers and distributors of publications no less than those of writers or printers. Indeed, the essence of the First Amendment right to freedom of the press is not so much the right to print as it is the right to read."  238 F. Supp. 846, 847-48 (N.D. Cal. 1964).

Although no case has directly addressed the First Amendment rights of distributors who seek to send books or other publications to prisoners, the cases discussed above firmly establish that First Amendment protections apply not only to readers and publishers, but to book distributors as well, and may be invoked when a distributor seeks to challenge a governmental action that interferes with its constitutional rights.

### b.      Standing Requirements

Beyond these general considerations as to the First Amendment rights of book distributors, the general standing requirements support the conclusion that Plaintiff has standing in this case.  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To establish standing, "a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling.  [T]he critical question is whether [the] petitioner has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." Horne v. Flores, __ U.S. __, 129 S. Ct. 2579, 2592 (2009) (citing Lujan, 504 U.S. at 560-61.)  Here, Plaintiff's injury is concrete, particularized, and actual.  It was prevented from distributing two of its books to Texas prisoners, and both books are now on the unauthorized list.  Plaintiff has suffered damages to its constitutional free speech and due process rights, injuries to its business reputation, and loss of revenue.  (D.E. 1 at 9; D.E. 21 at 4.)  This injury is clearly traceable to Defendants' challenged action, being due solely to their alleged censorship decision.  Finally, the injury is redressable by a favorable ruling, as a ruling in Plaintiff's favor may result in the award of damages, declaratory, and injunctive relief.

In sum, the Court concludes that Plaintiff has standing to assert the claims made in its Original Complaint under the First Amendment. [5]

---

[5]  With respect to Plaintiff's due process claim, Defendants contend that when the books at issue in this case were determined to be inappropriate for the prison setting they sent notice to the requesting inmate and the publisher of each book, thus satisfying legal requirements and Thornburgh.  They therefore contend that Plaintiff's claims are now moot.  (D.E. 12 at 4-5.)  Plaintiff disputes Defendant's contention, and claims that there is no factual basis to support Defendants' claim that notification was sent to the publishers; further, as Defendants seek dismissal under Rule 12(b), not summary judgment, the Court should not look beyond the pleadings.  Moreover, the question now is not whether the publisher received notice, but

2.        **Statute of Limitations Bar**

The statute of limitations for Section 1983 claims is determined by the statute of limitations for personal-injury torts of the state in which the cause of action arose.  <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts.")   In Texas, this statute of limitations is two years.  Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ("[A] person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues.").   The cause of action under Section 1983 accrues, and thus the limitation period begins to run when "the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury.'"  <u>Dixon v. Hubert</u>, 260 Fed. Appx. 727, 728 (5th Cir. 2007) (quoting <u>Lavellee v. Listi</u>, 611 F.2d 1129, 1131 (5th Cir.1980)).

Defendants contend that Plaintiff's claim regarding <u>Perpetual Prisoner Machine</u> is time-barred, as the decision to add this publication to the prohibited materials list was made in 2000, nine years before Plaintiff filed this lawsuit.   Defendant argues that Plaintiff's claims are subject to a two year statute of limitations, and any claims that arose prior to November 3, 2007 are time-barred and should be dismissed.  (D.E. 12 at 5.)  In

---

whether Plaintiff as distributor received notice. (D.E. 21 at 6.)  Here, Plaintiff is asserting its own right to receive notice and an opportunity to object to the TDCJ decision. Whether the publisher received notice is of no relevance to Plaintiff's own due process rights.  As the Court has determined that Plaintiff, as a book distributor, has First Amendment protections, it is entitled to due process when those rights are infringed. <u>See</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).  Several circuits have recognized that both prisoners and publishers have a right to procedural due process (notice and opportunity to be heard) when their publications are rejected.  <u>See</u> <u>Jacklovich v. Simmons</u>, 392 F.3d 420, 433 (10th Cir. 2004); <u>Prison Legal News v. Cook</u>, 238 F.3d 1145, 1152-53 (9th Cir. 2001); <u>Montcalm Publ'g Co. v. Beck</u>, 80 F.3d 105, 109 (4th Cir. 1996) ("[P]ublishers are entitled to notice and an opportunity to be heard when their publications are disapproved for receipt by inmate-subscribers.").  If distributors have the same rights of access to prisoners as publishers, it follows that they should have the same due process protections as well.

response, Plaintiff argues that the statute of limitations defense is not applicable, as the issue is not when Perpetual Prisoner Machine was placed on the banned book list but rather when PLN suffered an injury from the censorship; this injury occurred within the two year limitations period, and a claim was made within this time period as well.  As Defendants did not provide PLN with notice when the book was placed on the banned book list, PLN had no way to know that the book was subject to censorship at the time. (D.E. 21 at 7.)

  While it may be true that the original decision to place Perpetual Prisoner Machine on the list of prohibited materials occurred in 2000, Plaintiff's complaint does not arise from this event, but rather the March 2009 incident in which this publication did not reach its intended recipient at TDCJ's Allred Unit.  (D.E. 1 at 6.)  In other words, Plaintiff was first injured in March 2009, when it sent Perpetual Prisoner Machine to an inmate at the Allred Unit but the book was not delivered due to the DRC's earlier decision to place it on the list of prohibited materials.  Only after this occurrence was Plaintiff "in possession of the critical facts that [it] ha[d] been hurt and who ha[d] inflicted the injury."  Dixon, 260 Fed. Appx. at 728.  The Section 1983 cause of action therefore did not accrue until March 2009, and is well within the two year limitations period.

  In sum, the Court rejects Defendants' argument that Plaintiff lacks standing to bring a First Amendment challenge in this case, as existing case law demonstrates that First Amendment protections extend to a book distributor.  The Court also rejects Defendants' statute of limitations argument, as Plaintiff's injury with respect to Perpetual Prisoner Machine did not occur until March 2009.

**V.      Conclusion**

For the reasons stated above, the Court DENIES Defendants' Motion to Transfer Venue.  (D.E. 11.)  Also for the reasons stated above, the Court DENIES IN PART Defendants' Motions to Dismiss for lack of standing and expiration of the statute of limitations. (D.E. 12, 16, 19, 30.)  The Court defers judgment on the issue of qualified immunity.  Defendants may submit additional briefing on the subject of qualified immunity by January 6, 2010, and Plaintiff must respond no later than January 13, 2010.

SIGNED and ORDERED this 17th day of December, 2009.

                                               Janis Graham Jack
                                               United States District Judge