UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-296 |
| | § | |
| BRAD LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

On this day came on to be considered Defendants' Supplemental Motion to Dismiss Based on Qualified Immunity (the "Motion"). (D.E. 43.) For the reasons stated herein, Defendants' Motion is GRANTED.

**I.   Jurisdiction**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343(a)(3) and (4) (civil rights).

**II.   Factual and Procedural Background**

The factual background of this case is fully recounted in this Court's December 17, 2009 Order. (D.E. 32.) Essentially, Plaintiff Prison Legal News ("PLN") originally brought suit to challenge Defendants' decision to censor two publications that PLN attempted to distribute to inmates, <u>Women Behind Bars: The Crisis of Women in the U.S. Prison System</u> and <u>Perpetual Prisoner Machine: How America Profits from Crime</u>. PLN states that it was not notified of the Texas Department of Criminal Justice's ("TDCJ") censorship decision nor provided with an opportunity to appeal that decision. PLN argues that TDCJ's censorship regime serves no legitimate penological purpose as

applied to PLN's distributed publications, and violates PLN's constitutional rights under the First Amendment and due process clause of the Fourteenth Amendment. (D.E. 1.) On February 16, 2010, the Court granted Plaintiff's motion to file a First Amended Complaint. (D.E. 47.) In this Amended Complaint, Plaintiff identifies a John Doe Defendant as Michayel Smith, a mailroom representative at TDCJ's Hilltop Unit. (D.E. 48 at 3; D.E. 45 at 2.) The Amended Complaint also alleges that the TDCJ censors four additional publications that PLN distributes, namely <u>The Politics of Heroin: CIA Complicity in the Global Drug Trade</u>, by Alfred W. McCoy; <u>Soledad Brother: The Prison Letters of George Jackson</u>, by George Jackson; <u>Lockdown America: Police and Prisons in the Age of Crisis</u>, by Christian Parenti; and <u>Prison Masculinities</u>, by Don Sabo, Dr. Terry Kupers, and Willie London. (D.E. 48 at 7; D.E. 45 at 2.) PLN alleges that these books are on TDCJ's permanent "disallowed" list, and that TDCJ did not notify PLN of its censorship decision with respect to any of the publications. (D.E. 48 at 7, 8-9.)

On December 17, 2009, the Court denied motions to dismiss for lack of standing filed by Defendants Livingston, White, Campuzano, Smith, Brown, and Lopez. (D.E. 32.) In that Order, the Court held that PLN had standing as a book distributor to bring a First Amendment challenge to Defendants' actions in this case, and rejected Defendants' statute of limitations argument with respect to the <u>Perpetual Prisoner Machine</u> publication. (D.E. 32 at 19.) The Court, however, deferred judgment on the issue of qualified immunity, raised by Defendants sued in their individual capacities, and ordered additional briefing on the subject. In compliance with this Order, Defendants Livingston (in his individual capacity), Smith, Brown, Campuzano, White, Lopez, Campbell, and Bell filed the Motion presently before the Court, seeking dismissal pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (D.E. 43.)   Plaintiff PLN filed its Response on February 12, 2010.  (D.E. 44.)[1]

**III.    Discussion**

    **A.    Motion to Dismiss Standard**

A motion to dismiss on the basis of qualified immunity is generally evaluated under Rule 12(b)(6) rather than Rule 12(b)(1).  See Collins v. Ainsworth, 382 F.3d 529, 536 (5th Cir. 2004); Baker v. Putnal, 75 F.3d 190, 197 (5th Cir. 1996); Richard v. Capps, 2007 WL 2428928, at *2 n.6 (N.D. Tex. Aug. 28, 2007) ("[T]he Court notes that Rule 12(b)(1) is not a proper vehicle to assert dismissal on grounds of qualified immunity. The Fifth Circuit has held that the defense of qualified immunity should be analyzed under a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment.") (citing Baker).

When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), all well-pleaded facts are accepted as true and are viewed in the light most favorable to the plaintiff.  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007); Gregson v. Zurich Am. Ins. Co., 322 F.3d 883, 885 (5th Cir. 2003) ("This Court construes the complaint liberally in favor of the plaintiff, and takes all facts pleaded in the complaint as true.").  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" 495 F.3d at 205 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."  Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009).

---

[1] Defendants filed their Motion prior to the filing of the Amended Complaint in this action.  The new facts alleged do not, however, affect the qualified immunity analysis in this case, as the same constitutional violations are alleged to have occurred in relation to the four new books PLN has identified.

3 / 15

### B. Qualified Immunity

#### 1. General Principles

Government officials who perform "discretionary functions" are entitled to the defense of qualified immunity for suits in their individual capacity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Goodman v. Harris County, 571 F.3d 388, 396 (5th Cir. 2009) ("Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity."). Qualified immunity applies to Section 1983 claims. See, e.g., Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993) ("[W]e have recognized two kinds of immunities under § 1983. Most public officials are entitled only to qualified immunity."). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted). The Fifth Circuit has emphasized the broad protections of qualified immunity, stating that it "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." DePree v. Saunders, 588 F.3d 282, 288 (5th Cir. 2009).

Because qualified immunity constitutes "an immunity from suit rather than a mere defense to liability it is effectively lost if a case is erroneously permitted to go to trial. [T]he 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." Pearson, 129 S. Ct. at 815 (internal citations and quotation marks omitted). Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

Until recently, the Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id. at 815-16 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court in Pearson v. Callahan, however, recently rejected this mandatory two step approach, stating instead, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818. Thus, the Court is free to conduct the qualified immunity analysis in any order.

The question of whether a right is "clearly established" turns on "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he

confronted." Mace v. City of Palestine, 333 F.3d 621, 623-24 (5th Cir. 2003). The Supreme Court has explained, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Murray v. Earle, 405 F.3d 278, 289 (5th Cir. 2005) ("Although there need not be prior case law directly on point for a constitutional right to be clearly established, the state of the law must be such that a reasonable officer would be on notice that his actions could violate a constitutional right.").

Once a defendant has invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To defeat a qualified immunity claim, a plaintiff must: "1) state a claim for a violation of a constitutional right; 2) show that the constitutional right was established at the time of the actions at issue; and 3) demonstrate that [the defendant's] conduct was objectively unreasonable in light of the legal rules clearly established at the time of [his or her] actions." Decker v. Dunbar, 2009 WL 5095139, at *1 (5th Cir. Dec. 21, 2009) (citing Thomas v. City of Dallas, 175 F.3d 358, 363-64 (5th Cir. 1999)).

### 2. Qualified Immunity for TDCJ Defendants

In this case, Defendants argue that their actions are consistent with the policies governing delivery of publications to inmates established by the Fifth Circuit in Guajardo v. Estelle, 580 F.2d 748 (5th Cir. 1978), and the more general reasonableness standard

enunciated by the Supreme Court in <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989).  Under these policies, both the sender of a book and the intended inmate recipient receive notice and an opportunity to appeal when a book is originally denied.  Defendants contend that, as PLN was not the original sender of either <u>Women Behind Bars</u> or <u>Perpetual Prisoner Machine</u>, it was not entitled to notice and opportunity to appeal the TDCJ decision under existing law.  Thus, the question is whether PLN, as an additional sender of a publication, has a clearly established right to notice and an opportunity to respond to an earlier denial and appeal.  (D.E. 43 at 4-5.)  When <u>Perpetual Prisoner Machine</u> was originally denied in 2000, Defendants claim that both the inmate and sender received the required notice and opportunity to appeal.  The same is true of <u>Women Behind Bars</u>, which was originally denied in 2008, after it was sent by <u>amazon.com</u>.  Because PLN was not the original sender of either publication, it was not entitled to receive notice and an opportunity to appeal.  (D.E. 43 at 6.)   To overcome qualified immunity, Defendants argue, PLN must show that each new sender of a book, and each new inmate recipient, has a clearly established right to receive notice of the book's denial and opportunity to appeal.  As no case has established that the TDCJ must allow additional appeals, PLN cannot meet its burden.  (D.E. 43 at 6.)  Defendants further state that, even if such a right does exist, it is not "clearly established."  As such, Defendants claim to be entitled to qualified immunity, and that they are entitled to dismissal of the suit against them in their individual capacities.  (D.E. 43 at 6-7.)  Defendant Livingston further argues that the suit against him in his individual capacity must be dismissed because, as the Executive Director of the TDCJ, he had no personal involvement in the actions alleged by PLN.  PLN has thus failed to state a claim against Livingston in his individual capacity, and dismissal of this

claim is proper, according to Livingston. (D.E. 43 at 7.)

In response, PLN first distinguishes between its First Amendment claims and its due process claims. It argues that, as Defendants' briefing does not address qualified immunity with respect to the alleged violation of PLN's free speech rights, Defendants essentially concede that such violations took place and do not seek dismissal of these claims. Rather, PLN reads Defendants' Motion as urging only the dismissal of its due process claims on qualified immunity grounds. (D.E. 44 at 2.)[2] With respect to those claims, PLN refutes Defendants' contention that present law only requires prison officials to provide notice and an opportunity to appeal to the first person to send a censored book to prisoners, not every subsequent sender. Rather, PLN contends that clearly established constitutional law requires that all senders of a publication receive notice of a prison decision to censor a publication and provide the sender with an opportunity to appeal that decision. (D.E. 44 at 2, 4-8.) Courts have repeatedly recognized senders' due process rights, and have not limited those rights to only the first sender of a publication. (D.E. 44 at 4-5.) Even TDCJ policies, PLN contends, do not limit the right to appeal to the first sender of a publication. (D.E. 44 at 6.)

The qualified immunity issue presents a close question in this case. As an initial matter, Defendants are entitled to claim qualified immunity, as they are all TDCJ employees performing discretionary functions, and are sued in their individual capacities.

---

[2] Although Defendants request that the Court dismiss "all of Plaintiff's claims against them in their individual capacities," (D.E. 43 at 7) Defendants appear to argue that they are entitled to qualified immunity with respect to the due process claims only. (D.E. 43 at 5 ("[T]he proper inquiry for the qualified immunity analysis is whether *additional* senders of books have a 'clearly established' right to notice and opportunity to respond to an earlier denial and appeal.").) Defendants do not make a separate argument that they are entitled to qualified immunity with respect to the First Amendment claims. This understanding is further confirmed by Defendants' Amended Answer, in which they assert that due process rights for distributors are not "clearly established," but make no such argument with respect to Plaintiff's First Amendment claims. (D.E. 49 at 11-12.) The Court thus interprets Defendants' qualified immunity argument as applying only to Plaintiff's due process claims.

8 / 15

Goodman, 571 F.3d at 396.  Defendant Livingston is the executive director of the TDCJ; Defendant Smith is the program specialist for TDCJ's Mail System Coordinators Panel and is responsible for reviewing censored publications; Defendant E. Brown is a mailroom representative who is responsible for censoring publications at the Garza East Unit; and Defendants Campuzano, White, Lopez, Campbell, and Bell are all members of TDCJ's Director's Review Committee ("DRC").  (D.E. 48 at 2-4.)[3]

There is no dispute that TDCJ policies acknowledge due process protections for distributors, as they afford the sender of a publication notice and an opportunity to appeal after that publication is initially denied.  (D.E. 43 at 5.)  The question before the Court is whether subsequent senders of a publication, namely a distributor such as PLN, also have a clearly established right to notice that its books have been rejected and to receive an opportunity to appeal the TDCJ decision.

In Guajardo, the Fifth Circuit laid out the following procedures that prison administrators must follow before they may reject a publication intended to be delivered to an inmate:

> Before delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. Prisoners must, of course, be allowed to appeal that decision through proper administrative channels.

580 F.2d at 762 (internal citations omitted).  Further, "[p]risoners must be given notification of the refusal.  An inmate receives sufficient review of the administration's

---

[3] Defendant Michayel Smith did not join in the Supplemental Motion to Dismiss, as her identity was not revealed until the Amended Complaint was filed on February 16, 2010.  Ms. Smith is alleged to perform the same duties at the Hilltop Unit that Defendant E. Brown performs at the Garza East Unit, namely, "censoring publications as they arrive at the Hilltop mailroom before they are distributed to prisoners." (D.E. 48 at 3.)  Because Ms. Smith's job function is very similar to that performed the other Defendants, the Court's qualified immunity analysis is also applicable to Defendant Michayel Smith.

decision not to permit the magazine if he receives (1) appropriate notice, (2) a reasonable opportunity to challenge the initial decision, and (3) an ultimate decision by a disinterested party not privy to the initial censorship decision." Id. at n.10; see Thompson v. Patteson, 985 F.2d 202, 206-07 (5th Cir. 1994) (citing Guajardo). Guajardo must be read in light of the Supreme Court decision in Thornburgh, which held that prison regulations regarding censorship of publications must be "reasonably related to legitimate penological interests."  490 U.S. at 404; Brewer v. Wilkinson, 3 F.3d 816, 824 (5th Cir. 1993).

The Supreme Court in Procunier v. Martinez recognized the rights of senders impacted by a prison official's censorship decision to "be given a reasonable opportunity to protest that decision, and [to have] complaints be referred to a prison official other than the person who originally disapproved the correspondence." Procunier v. Martinez, 416 U.S. 396, 418 (1978), overruled in part on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989). Since Procunier, courts have recognized that both inmates and senders of publications have a right to procedural due process when publications are rejected. See Jacklovich v. Simmons, 392 F.3d 420, 433 (10th Cir. 2004) ("Other courts have recognized that both inmates and publishers have a right to procedural due process when publications are rejected. . . . We agree."); Prison Legal News v. Cook, 238 F.3d 1145, 1152-53 (9th Cir. 2001); Montcalm Pub. Corp. v. Beck, 80 F.3d 105, 106 (4th Cir. 1996) ("We hold that publishers are entitled to notice and an opportunity to be heard when their publications are disapproved for receipt by inmate subscribers."); Prison Legal News v. Lindsey, No. 3:07-CV-0367-P, at 5 (N.D. Tex. June 18, 2007) ("[T]he right of a publisher to procedural due process in the event that its publication is disallowed by

prison authorities appears equally clear.").

The rules established in Guajardo and related cases have since been codified in TDCJ policies. See Texas Dep't of Crim. Justice, Uniform Offender Correspondence Rules, BP-03.91 (July 13, 2007).[4] Under these policies, "[i]f a publication is rejected, the offender, the editor and/or the publisher shall be provided a written notice of the disapproval and a statement of the reason within 72 hours of receipt of said publication on a Publication Denial Form. Within the same time period, the offender, the editor and/or the publisher shall be notified of the procedure for appeal." Id. at 10. In such circumstances, "[t]he offender, the editor or the publisher may appeal the rejection of the publication through procedures provided by these Rules." Id.[5] The Offender Orientation Handbook outlines a similar procedure, but provides that the notice and opportunity to appeal are extended to "[t]he offender and the sender or addressee." Tex. Dep't of Crim. Justice, Offender Orientation Handbook, Uniform Offender Correspondence Rules, Part IV.A. (Nov. 2004). TDCJ regulations provide the following rules governing inspection of publications:

> All publications are subject to inspection by the MSCP [Mail System Coordinators Panel] in Huntsville and by unit staff. The MSCP has the authority to accept or reject a publication for content, subject to review by the DRC. Publications shall not be rejected solely because the publication advocates the legitimate use of the Offender Grievance Procedure, urges

---

[4] The Court may take judicial notice of official TDCJ policies. See Fed. R. Evid. 201(b); see, e.g., Hutt v. Hofman, 2009 WL 2601927, at *7 (D. Vt. Aug. 18, 2009) (taking judicial notice of Vermont Department of Corrections regulations); Martin v. Hurtado, 2008 WL 4145683, at *5 (S.D. Cal. Sept. 3, 2008) (taking judicial notice of state prison operational procedure); Hosendove v. Myers, 2003 WL 22216809, at *1 (D. Conn. Sept. 19, 2003) (taking judicial notice of Department of Corrections Administrative Directives).

[5] Defendants note that the TDCJ policies and procedures in fact provide for notice to senders of a publication, not just a publisher. (D.E. 43 at 5 n.2). This issue is also addressed in Defendant Jennifer Smith's Affidavit. The Court does not, however, consider this Affidavit. While the "use of affidavits in consideration of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction is proper and, unlike a Rule 12(b)(6) motion, does not require notice to the plaintiffs or change the motion into a motion for summary judgment," Carmichael v. United Technologies Corp., 835 F.2d 109, 114 n.7 (5th Cir. 1988), qualified immunity is generally considered under Rule 12(b)(6), not Rule 12(b)(1). See Collins, 382 F.3d at 536. The Court need not and does not consider the Affidavit at this stage of the proceedings.

>offenders to contact public representatives about prison conditions or contains criticism of prison authorities.

Texas Dep't of Crim. Justice, Uniform Offender Correspondence Rules, BP-03.91, at 12. Relevant to this case, the regulations permit a publication to be rejected if "[a] specific determination has been made that the publication is detrimental to offenders' rehabilitation because it would encourage deviant criminal sexual behavior." Id. at 10.[6]

>The TDCJ procedures also govern appeals, and provide:

>Any offender or other correspondent, or editor or publisher of a publication may appeal the rejection of any correspondence or publication. An offender or a correspondent may appeal the placement of the correspondent on the offender's negative mailing list. An offender or a correspondent may apply to the DRC for reconsideration of the negative mailing list placement after the passage of six (6) months.

Texas Dep't of Crim. Justice, Uniform Offender Correspondence Rules, BP-03.91, at 12. The regulations further provide that "[a] written notice of appeal shall be sent to the DRC within two (2) weeks of notification of rejection. Upon receipt of notification, the correspondence or publication in question shall be sent to the DRC." Id. Thereafter, "[t]he DRC shall render its decision within two (2) weeks," and "shall issue written notification of the decision to the parties involved within 48 hours." Id. at 13.

Existing precedent and TDCJ regulations thus clearly establish the due process rights of initial distributors and inmate recipients. The relevant case law does not, however, address whether such due process protections extend to subsequent distributors or recipients. Guajardo addresses the due process rights of inmates, and does not specifically address the rights of subsequent recipients, let alone distributors. Procunier

---

[6] Other bases for rejection include, for example, the publication contains "information regarding the manufacture of explosives, weapons or drugs," "material that a reasonable person would construe as written solely for the purpose of communicating information designed to achieve the breakdown of prisons through offender disruption such as strikes, riots or security threat group activity," or "sexually explicit images." Texas Dep't of Crim. Justice, Uniform Offender Correspondence Rules, BP-03.91, at 10.

is also not directly on point, as it discusses procedural protections for those who send letters to inmates, not protections afforded to distributors of mass produced publications that may be sent to many different inmates over the course of months or years. Procunier, 416 U.S. at 418-19.  The more recent lower court decisions discussed above come somewhat closer to recognizing the due process rights of subsequent distributors, but none clearly establish procedural protections for this group.  Plaintiff has provided no other case law from which to conclude that the due process rights of subsequent distributors in this context is "clearly established," nor has the Court discovered any such case law in its independent research.  While subsequent senders and recipients perhaps should not be forced to accept another party's ultimately ineffective challenge that may have occurred years or even decades earlier, the Court concludes that no existing case law clearly extends due process rights to these groups.

As noted previously, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Saunders, 2009 WL 3769108, *2.  For a constitutional right to be "clearly established," it is not necessary for the "very action in question [to have] previously been held unlawful;" rather, it is only necessary that "in the light of pre-existing law the unlawfulness must be apparent."  Anderson, 483 U.S. at 640.  Although the case law in this area might have indicated to Defendants that their practices violated the due process rights of subsequent distributors, the unlawfulness of their actions was not "apparent" in light of pre-existing law.  Defendants' actions were neither "plainly incompetent" nor constituted a knowing violation of the law.

In sum, the Court concludes that Defendants' conduct did not "violate clearly

established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Defendants are therefore entitled to qualified immunity with respect to Plaintiff's due process claims, and the individual capacity claims against them must be dismissed.

## IV. Conclusion

For the reasons stated above, Defendants' Supplemental Motion to Dismiss based on Qualified Immunity is GRANTED. (D.E. 43.) Plaintiff's individual capacity claims for due process violations against Defendants Brad Livingston, Jennifer Smith, E. Brown, Gilbert Campuzano, Joni White, Richard Lopez, Kevin Campbell, Chris Bell and Michayel Smith[7] are hereby DISMISSED. The following causes of action remain against Defendants:

    (1)    Defendant Brad Livingston (official capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

        b. Count II: Due Process of Law (D.E. 48 ¶¶ 47-49)

    (2)    Defendant Brad Livingston (individual capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

    (3)    Defendant Jennifer Smith (individual capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

    (4)    Defendant E. Brown (individual capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

    (5)    Defendant Gilbert Campuzano (individual capacity):

---

[7] While Defendant Michayel Smith did not join in the motion to dismiss, the qualified immunity analysis conducted herein extends equally to her. The Court will not require Defendant Smith to file a separate motion to dismiss on the basis of qualified immunity, and instead dismisses the individual capacity due process claim against her as well.

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

(6) Defendant Joni White (individual capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

(7) Defendant Richard Lopez (individual capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

(8) Defendant Kevin Campbell (individual capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

(9) Defendant Chris Bell (individual capacity):

        a. Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

(10) Defendant Michayel Smith (individual capacity):

Count I: Freedom of Speech and Expression (D.E. 48 ¶¶ 44-46)

SIGNED and ORDERED this 21st day of April, 2010.

_____
Janis Graham Jack
United States District Judge